**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**UNITED STATES OF AMERICA**

**v.**

**PHILLIP ALPHONSO MAYES,**

**Defendant.**

</td><td>

**NO. 25-cr-276 (TNM)**

</td></tr>
</table>

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Defendant Phillip Mayes illegally possessed two loaded firearms.  He kept one in a mailbox and another in his closet.  When he encountered a police officer guarding the firearm in the mailbox, he sought to retrieve the firearm anyway.  The two struggled over the loaded firearm, then Mayes pushed the police officer against a wall and dragged her up two flights of stairs before she extricated herself.  Mayes has now pled guilty to the crimes of unlawfully possessing a firearm and resisting arrest.  To justly punish Mayes's serious conduct, account for his criminal history, provide adequate deterrence, and avoid unwarranted sentencing disparities, this Court should sentence him to 10 months for the firearm crime and 6 months for resisting arrest.

## I.     FACTUAL BACKGROUND

In the morning of August 22, 2025, a U.S. Postal Service employee was inspecting mailboxes at the condominium building at 3819 W Street SE, Washington, D.C. when he discovered a firearm inside mailbox 301.  *See* PSR ¶ 15.  The employee alerted law enforcement.

1

Metropolitan Police Department Officer B.F. responded to the condominium building. *Id.*[1]
The Postal Service employee led her to the firearm, then B.F. contacted the D.C. Department of Forensic Sciences to recover it. *See id.*

While B.F. was guarding the firearm, Mayes walked down the steps of the building to the mailbox and grabbed the firearm. *See* Ex. A at 11:47:07–11:47:13. B.F. grasped Mayes's arm and took the firearm from Mayes as he exclaimed, "That's mine!" *See id.* at 11:47:11–11:47:20.



**Still Photo of Mayes Holding the Firearm After Taking It from the Mailbox**

B.F. tried to detain Mayes, but he struggled with her and pushed her against a wall. *Id.* at 11:47:21–11:48:04. He then forced his way up the stairs. *Id.* at 11:48:05–11:50:26. B.F., who was substantially smaller than Mayes, held onto his clothing in an effort to detain him while calling for backup and repeatedly yelling, "Stop!" *Id.* Mayes refused to comply, grappling with B.F. as

---

[1] The government has submitted an excerpt from B.F.'s body-worn camera footage marked as Exhibit A.

he dragged her up multiple flights of stairs. *Id.* At one point, when Mayes reached one of the stairway's landings, he even tried to push B.F. away from him down the stairs. *See id.* at 11:49:34–11:49:54. Eventually, Mayes dragged B.F. through the door into his condo unit. *See id.* at 11:49:55–11:51:20. Once inside the unit, B.F broke away from Mayes's grasp and ran down the stairs away from him. *See* PSR ¶ 16.

The struggle from the mail area, up the stairs, and into Mayes's condo unit lasted several minutes. As a result of the struggle, B.F. suffered pain in her right hand and elbow. *Id.* B.F. also sustained scratches to her right forearm and the right side of her face. *Id.* Additional MPD officers soon arrived on scene and placed Mayes under arrest. *Id.* ¶ 17.

The D.C. Department of Forensic Sciences recovered the firearm initially found in mailbox 301. *See id.* It was a Rossi .38 Special revolver bearing serial number D539347. *Id.* It was loaded with five rounds of .38 Special ammunition. *Id.*

 

**The Firearm Found in Mailbox 301**

At MPD's Sixth District Station, Mayes met with a detective and waived his *Miranda* rights. *Id.* ¶ 18. He admitted that he retrieved the handgun, which he had previously placed in his mailbox, and tried to take it upstairs. *See id.* Mayes also told the detective that he had a .357 Magnum inside his closet in a bag. *Id.*

MPD officers later obtained a warrant and searched Mayes's condo unit. *Id.* ¶ 19. Inside a bag in a closet, they found a silver firearm with a black handle. *Id.* It was a Rossi .357 Magnum revolver loaded with six rounds of .357 Magnum ammunition. *Id.*



**The Firearm Found in Mayes's Closet**

Mayes was prohibited from possessing a firearm because he had been previously convicted of at least two crimes punishable by a term of incarceration greater than one year. *Id.* ¶ 21. In 2000, he was convicted in Lake County (Illinois) Circuit Court of unlawful possession of a controlled substance. *See id.* ¶¶ 21, 43. And in 1992, he was convicted in Oakland County (Michigan) Circuit Court of being a habitual offender (third offense). *See id.* ¶¶ 21, 41.

## II.    PROCEDURAL HISTORY

Mayes was initially charged by criminal complaint with two counts of unlawfully possessing a firearm and ammunition after having been convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1), and one count of assaulting a police officer, in violation of D.C. Code § 405(c).  Complaint, ECF No. 1.  An indictment later charged him with the same offenses.  Indictment, ECF No. 12.

Mayes pled guilty pursuant to a plea agreement to two charges in a superseding information.  *See* Plea Agreement ¶ 1, ECF No. 20.  Count One charges him with one count of unlawfully possessing a firearm and ammunition after having been convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1).    Superseding Information at 1, ECF No. 18.  Count Two charges him with resisting arrest, in violation of D.C. Code § 405.01.  *Id.* at 2.  In return for his guilty plea, the government agreed not to prosecute Mayes further for the conduct described in a statement of offense.  Plea Agreement ¶ 3.  The government also agreed to ask for a sentence at the bottom of the applicable Sentencing Guidelines range.  *See id.* ¶ 5.

Finally, Mayes was released on conditions pending trial.  *See* Order Setting Conditions of Release, ECF No. 10.  But after he pled guilty, the Court ordered that he self-surrender into custody on December 15, 2025.  *See* Min. Entry (Dec. 1, 2025).  Mayes has been in custody since that date.  PSR ¶ 11.

## III.    SENTENCING GUIDELINES ANALYSIS

There is no dispute regarding the applicable Sentencing Guidelines.  For Count One, the violation of 18 U.S.C. § 922(g)(1), the parties agree that the following Guidelines provisions apply:

| | | |
|---|---|---|
| USSG § 2K2.1(a)(6)(A) | Base offense level (prohibited person) | 14 |
| USSG § 3E1.1 | Acceptance of responsibility | <u>-2</u> |
| | **Total offense level** | **12** |

*See* PSR ¶¶ 5, 26–35; *see also* Plea Agreement ¶ 4.A.  The parties also agree with the presentencing report's computations regarding criminal history, which are summarized below:

| Conviction(s) | Jurisdiction and Case Number | Arrest Date | Sentence Date(s) | Sentence | CH Points |
|---|---|---|---|---|---|
| Unlawful possession of a controlled substance | Lake County Circuit Court, IL: 00-CF2428 | 5/23/2000 | 11/16/2000 | Probation: 2 years | 0 |
| | | | 6/15/2001 (revoked) | Incarceration: 2 years | |
| Larceny | 19th Judicial Circuit, MI: 94-11941 | 3/18/1994 | 3/21/1994 | Incarceration: 90 days | 0 |
| (1) Retail fraud, first degree<br><br>(2) Habitual offender, third offense | Oakland County, MI: 92-118286FH | 6/26/1992 | 8/11/1992 | (1) Incarceration: 16 months to 4 years (vacated)<br><br>(2) Incarceration: 16 months to 4 years | 0 |
| Retail fraud, first degree | 3d Judicial Circuit, MI: 88-01191-01-FH | 9/17/1988 | 10/25/1988 | Incarceration: 6 months to 2 years | 0 |
| | | | 11/27/1990 (parole revoked) | Unknown | |
| | | | 8/11/1992 (parole revoked) | Unknown | |
| | | | 7/13/1994 (absconded) | | |
| | | | 7/5/1995 (returned as parole violator) | Unknown | |
| | | | 11/15/1995 (absconded) | Unknown | |

| | | | 6/12/1996 (absconded) | Unknown | |
| | | | 4/29/1997 (absconded) | Unknown | |
| | | | 11/25/1997 (returned as parole violator) | Discharged on maximum sentence 2/6/1999 | |
| (1) Larceny from building <br><br> (2) Assault and battery | 19th Judicial Circuit, MI: Unknown | 9/4/1987 | 9/9/1987 | (1) $500 or 30 days' jail <br><br> (2) $200 or 30 days' jail | 0 |
| (1) Larceny in a building <br><br> (2) Assault and battery | Oakland County, MI: 86-71585-FH | 12/26/2985 | 4/14/1986 | Incarceration: 70 days <br><br> Supervision: 2 years | 0 |
| | | | 11/2/1987 (parole revoked) | Incarceration: 1 to 4 years | |
| | | | 10/31/1988 (parole revoked) | Unknown | |
| | | | 11/27/1990 (parole revoked) | Unknown <br><br> Discharged on maximum sentence 8/24/1991 | |
| | | | | **Total** | **0** |

*See* PSR ¶¶ 38–44; *see also* Plea Agreement ¶ 4.B.  Because Mayes has zero criminal history points, he is in criminal history category I.  *See* PSR ¶ 7.

With a total offense level of 12 and a criminal history category of I, Mayes's Sentencing Guidelines range is 10 to 16 months of imprisonment.  *See* USSG § 5.A.

For Count Two, the violation of D.C. Code § 405.01, the parties and Probation agree that the D.C. Voluntary Sentencing Guidelines Manual does not recommend a sentence because the

offense carries a maximum sentence of 6 months of imprisonment.  *See* Plea Agreement ¶ 4.A n.1; PSR ¶ 36.

## IV.    SENTENCING ARGUMENT

The Court should sentence Mayes to 10 months of imprisonment on Count One and 6 months of imprisonment on Count Two.  Those sentences are sufficient, but not greater than necessary, to advance the statutory purposes of sentencing.  *See* 18 U.S.C. § 3553(a).  Specifically, the requested sentences would adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment, *id.* § 3553(a)(2)(A); account for Mayes's criminal history, *id.* § 3553(a)(1); afford adequate deterrence, *id.* § 3553(a)(2)(B); and avoid unwarranted sentencing disparities among similarly situated defendants, *id.* § 3553(a)(6).

### A.    Mayes's Offenses Were Serious and Warrant Punishment that Promotes Respect for the Law.

Unlawfully possessing a loaded firearm by itself is highly dangerous.  *Cf. United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases, in the detention context, to support the proposition that "unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public").  A single pull of the trigger—intentional or unintentional—has the power to end a life.  The presence of a firearm can thus escalate an argument or petty offense into a deadly encounter.  *Cf. United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) ("[C]arrying a loaded firearm . . . has the great potential to escalate into violence.").

Here, Mayes did not only possess one fully loaded firearm when he was not supposed to. He possessed two.  And he left one in a mailbox in a common area where anyone with access to the mailbox could happen across it and potentially discharge it by accident.  Then, when confronted

by a police officer, Mayes grabbed one of his loaded firearms and struggled against her attempts to retrieve it. The gun could have easily discharged in the tussle and seriously injured B.F., Mayes, or an innocent bystander.

But Mayes's dangerous conduct did not end there. Rather than submit to B.F.'s repeated commands to stop and her lawful efforts to detain him, Mayes dragged her up multiple flights of stairs. He even appeared to try to push her down the stairs. B.F. could have been seriously injured. She had no backup during a minutes-long struggle with a man much larger than her. Mayes stopped grappling with B.F. only when he returned to his condo unit, where his second loaded firearm was stored.

In all, Mayes's conduct created a significant danger for the public and for B.F. He also exhibited a flagrant disregard for the law—both the law that prohibited him from possessing a firearm and law enforcement's role in upholding the law. The government's recommended sentences would justly punish Mayes for his dangerous conduct and disregard for the law.

B.    The Court's Sentence Should Account for Mayes's Criminal History.

These offenses were not Mayes's first. From 1985 to 2000, Mayes was convicted for committing a series of offenses—five theft offenses, two assaults and batteries, and a drug offense. *See* PSR ¶¶ 38–43. The limited information available about these offenses reveal that Mayes repeatedly stole from retail establishments—and twice assaulted people in the process—despite multiple attempts by the criminal justice system to hold him accountable and deter him from committing additional crimes. Furthermore, Mayes's criminal history shows that he has difficulty complying with court-ordered supervision. He has absconded from supervision or had supervision revoked on numerous occasions. *See id.* ¶¶ 38, 40, 43. The sentences the government seeks would appropriately account for Mayes's history of criminality and noncompliance with court-ordered

9

supervision.

C.    The Court Must Deter Mayes and Others from Unlawfully Carrying Firearms and Resisting Arrest.

The deadly nature of a firearm cannot be overstated. Those who carry firearms unlawfully put the whole community in physical danger—whether they plan to use a firearm or merely risk accidentally discharging one. They should know their conduct risks serious punishment. The same is true for those who brazenly disregard a law enforcement officer's lawful orders—especially when a loaded gun is involved. Here, Mayes's revolvers were fully loaded, suggesting that he was prepared to use them and heightening the risk of an accidental discharge. And when a police officer tried to secure one of those loaded firearms, Mayes ignored the danger it posed and fought with her over it. In addition to the need for general deterrence, Mayes's conduct demonstrates that he must be brought to personally understand the consequences of unlawfully possessing a firearm and resisting arrest. The government's recommended sentences would serve both to deter Mayes specifically and deter others generally from unlawfully carrying firearms and resisting arrest.

D.    A Within-Guidelines Sentence Would Avoid Unwarranted Sentencing Disparities.

Finally, the government's requested sentences are necessary to avoid unwarranted sentencing disparities among defendants convicted of similar conduct. With respect to Count One, the median prison sentence for a defendant with same Sentencing Guidelines as Mayes is what the government requests: 10 months. *See* PSR ¶ 137. That sentence strikes the right balance of the sentencing factors. To Mayes's credit, his most recent criminal conviction before this case occurred more than 25 years ago. *See* PSR ¶ 43. But his offenses—involving two loaded firearms and the blatant disregard of a law enforcement officer's lawful efforts to detain him—were more

serious than a pure unlawful firearm possession case.  And although Mayes claims that he kept the firearms to protect himself, *see id.* ¶ 25, that cannot justify his illegal possession of two loaded firearms.  Even the defensive use of a firearm by someone prohibited from having one risks seriously injuring an innocent bystander.  Given the circumstances of Mayes's offenses and his history, a within-guidelines sentence of 10 months on Count One would avoid an unwarranted sentencing disparity between Mayes and other similarly situated defendants.

V.    **CONCLUSION**

The Court should sentence Mayes to 10 months of imprisonment on Count One and 6 months of imprisonment on Count Two.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ *Blake J. Ellison*
BLAKE J. ELLISON
Assistant United States Attorney
TX Bar No. 24117203
601 D Street NW
Washington, D.C. 20530
Phone: 202-436-5921
blake.ellison@usdoj.gov

11